UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>MATTHEW ERIK HANIS,<br><br>    Debtor,<br><br>———————————————<br><br>MEREDITH FRIEDMAN,<br><br>    Plaintiff/Appellant,<br><br>vs.<br><br>MATTHEW ERIK HANIS,<br><br>    Defendant/Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:16-cv-01447-JAR<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on appeal from a Bankruptcy Court order denying Debtor/Defendant/Appellant Matthew Erik Hanis's motion for summary judgment, granting Plaintiff/Appellee Meredith Friedman's motion for summary judgment, and declaring that certain debts are non-dischargeable, pursuant to 11 U.S.C. § 523(a)(15), in Mr. Hanis's Chapter 7 bankruptcy proceeding. The issues are fully briefed, and the Court heard oral argument from counsel. For the following reasons, the Court affirms the decision of the Bankruptcy Court.

### **Background**

The following facts are undisputed. Mr. Hanis and Ms. Friedman were married in 1995 (Bankr. Doc. 12 at ¶ 1). During their marriage, they jointly owned a business, M&M RET, LLC ("M&M") (Id. at ¶ 6). In March 2010, the couple divorced (Id. at ¶ 4). Pursuant to a Judgment of Dissolution of Marriage ("Divorce Decree") entered by the Circuit Court for the County of St.

Louis, Missouri ("Circuit Court"), Mr. Hanis would pay Ms. Friedman $5,000 per month in maintenance (Id. ¶ 5; Bankr. Doc. 12.1 at 5, 10). Mr. Hanis's maintenance obligation was non-modifiable, and it was to terminate only upon the death of either of the parties, Ms. Friedman's remarriage, or final payment in May 2020 (Bankr. Doc. 12.1 at 2, 5, 10).[1] The Divorce Decree further ordered that Ms. Friedman and Mr. Hanis would each retain a 50% interest in M&M after the divorce (Id. at 22-24; Bankr. Doc. 12 at ¶ 6). Notably, the Divorce Decree also included the following provision:

> Either party may buy the other out of his or her interest in [M&M] by paying the other three times the last 12 months of revenue or 50% of the net appraised value of said business, whichever is larger. The selling party shall be guaranteed that he/she shall be totally absolved of any debt owed by said business and the buyer shall prove he/she has been pre-approved for refinancing the business obligations to remove the seller from liability with respect to said obligations.

(Bankr. Doc. 12.1 at 24).

On March 12, 2012, Mr. Hanis agreed to purchase Ms. Friedman's interest in M&M, and the parties executed an "Agreement for Purchase of Membership Interest" ("Purchase Agreement") and a "Consent Agreement" (together "the Agreements") (Bankr. Docs. 12 at ¶¶ 7-8; 12.2 (Consent Agreement) and 12.3 (Purchase Agreement)). Under the Purchase Agreement, Mr. Hanis would pay a purchase price of $0 for Ms. Friedman's membership interest, which the parties agreed "represent[ed] the larger number between three times the last 12 months of revenue and 50% of the agreed upon value of [M&M]" (Bankr. Doc. 12.3 at ¶ 3). In exchange, Mr. Hanis agreed (1) to release Ms. Friedman from her obligation to operate M&M until his

---

[1] The Divorce Decree adopted an agreement the parties had reached as to the terms of their divorce. In a handwritten comment next to the agreed-upon provision for maintenance, the parties appear to have tried to alter the agreement to make Mr. Hanis's maintenance obligation modifiable upon Ms. Friedman's entrance into a co-habitation relationship (Doc. 12.1 at 5, 10). In a stipulation of facts filed in the Bankruptcy Court, the parties agreed that the maintenance obligation was non-modifiable pursuant to the terms of the Divorce Decree (Doc. 12 at ¶ 5).

2

maintenance obligation ceased; (2) to assume and hold Ms. Friedman harmless on all obligations associated with certain, then-known debts of M&M ("Business Debts"); (3) to "release, acquit and forever discharge [Ms. Friedman] from any and all claims, liabilities, demands, suits and causes of action of every nature and kind . . . and [to] hold [her] harmless for any obligation related to the Business Debt"; (4) to "take all steps available and make best efforts to remove [Ms. Friedman] from having any liability whatsoever for the Business Debt"; and (5) "[i]n the event that any action is brought against [Ms. Friedman] for any claim involving the Business Debt," to "indemnify and hold [Ms. Friedman] harmless for any and all such claims." (Id. at ¶¶ 4-5, 8). The parties indicated in the Purchase Agreement that they recognized and understood that it might not be possible to remove Ms. Friedman from the Business Debts, but that "nevertheless, [Mr. Hanis] shall release [Ms. Friedman] from all obligations related to the Business Debt" (Id. ¶ 4).

In the Consent Agreement, the parties initially recognized and acknowledged that Mr. Hanis's maintenance obligation was not modifiable according to the terms of the divorce decree; that under the divorce decree, his maintenance obligation could only be terminated upon the death of either party or Ms. Friedman's remarriage or entry into a co-habitation relationship; and that the Circuit Court could not terminate or modify Mr. Hanis's non-modifiable maintenance obligation (Bankr. Docs. 12 at ¶ 12; 12.2 at 1). The Consent Agreement indicates that the parties nonetheless desired to enter into the Consent Agreement to modify Mr. Hanis's maintenance obligation to Ms. Friedman and to release and indemnify Ms. Friedman from the Business Debts (Bankr. Doc. 12.2 at 1). The Consent Agreement purports to modify Mr. Hanis's maintenance obligation by lowering it from $5,000 per month to $3,700 per month; changing the final payment date from May 2020 to June 2019; and extending the obligation beyond Ms. Friedman's

3

remarriage should she remarry before January 2018, albeit in lesser amounts as set forth in an agreed-upon payment schedule (Bankr. Docs. 12 at ¶¶ 11, 13-14; 12.2 at 1-2).[2] Ms. Friedman remarried in November 2012 (Bankr. Doc. 24.1 at ¶ 20).

On July 1, 2013, Mr. Hanis filed a petition for relief under Chapter 7 of the Bankruptcy Code, seeking discharge of, inter alia, the Business Debts. In re Hanis, No. 13-46113 (Bankr. E.D. Mo. July 1, 2013). On February 4, 2014, Ms. Friedman initiated the adversary proceeding underlying the instant appeal, seeking an order declaring that the Business Debts are non-dischargeable in Mr. Hanis's Chapter 7 proceeding, pursuant 11 U.S.C. § 523(a)(15), because they were incurred in connection with the parties' divorce (Bankr. Doc. 1). As relevant, § 523(a)(15) prevents a debtor from discharging in bankruptcy debts he incurred "in connection with a separation agreement, divorce decree or other order of a court of record." Mr. Hanis filed an answer, denying that the Business Debts were incurred "in connection with a separation agreement, divorce decree or other order of a court" within the meaning of § 523(a)(15) (Bankr. Doc. 7), and a counter-claim seeking a declaration that the Business Debts were dischargeable (Bankr. Doc. 8).

On July 30, 2014, the parties filed cross-motions for summary judgment (Bankr. Docs. 18-21). In her motion for summary judgment, Ms. Friedman first argued in favor of a narrow construction of § 523(a)(15)'s exception to discharge. (Doc. 21 at 3-4). She asserted that Mr. Hanis incurred the Business Debts "in connection with" their divorce decree because the Agreements modified the parties' obligations under the Divorce Decree (Id. at 4-9). Ms. Friedman emphasized that the Consent Agreement refers to the Divorce Decree nine times, that

---

[2] According to Mr. Hanis, the $1,300 reduction in maintenance was based on the anticipated cost to hire a property manager to assume Ms. Friedman's previous duties at M&M (Bankr. Doc. 18.1 at ¶ 12).

4

it modifies Mr. Hanis's maintenance obligation as well as the parties' relative ownership interests in M&M, and that it requires Mr. Hanis to hold her harmless and to indemnify her from the Business Debts (Id. at 6-8). Ms. Friedman further argued that the fact that two years elapsed between the Circuit Court's entry of the divorce decree and the parties' execution of the Agreements does not render the Business Debts non-dischargeable under § 523(a)(15) (Id. at 9-10). In her view, the issue of whether a debt is incurred "in connection with" a divorce decree does not depend on the timing of a post-divorce agreement between ex-spouses, but turns instead on the nature of the debt incurred in the agreement (Id.; Bankr. Doc. 23 at 2-5).

In support of her motion for summary judgment, Ms. Friedman cited extensively to Woosley v. Woosley, No. 3:09-0910, 2010 WL 500423, at *4 (M.D. Tenn. Feb. 5, 2010). In Woosley, the parties' divorce decree provided that each party would retain an interest in a business they had owned and operated during their marriage. Id. at *2. Less than four months after the divorce decree was entered, Mr. Woosley agreed to purchase Ms. Woosley's interest in the business and, in exchange, agreed to make monthly payments to her for ten years. Id. Mr. Woosley thereafter filed for relief under Chapter 7 of the Bankruptcy Code, seeking discharge of the business's debts and his monthly payment obligation to Ms. Woosley. Id. at 3. In affirming the bankruptcy court's finding that the debts were non-dischargeable under § 523(a)(15), the district court initially emphasized that the purchase agreement referred to the divorce decree several times. Id. at *2, 6. The district court further noted that the purchase agreement had not changed the nature of Mr. Woosley's obligation to Ms. Woosley, as he had essentially reaffirmed his obligation to her and his commitment that the business would provide her with a source of revenue "even if the revenue came in a somewhat different form," i.e. as monthly payments toward the purchase as opposed to a salary paid by the business. Id. at *7. The district court also

5

concluded that basic principles of equity and fairness suggested that the debt should not be dischargeable. Id. at *7-8. The district court thus affirmed the bankruptcy court's conclusion that Mr. Woosley had incurred a debt, the monthly payments, "in connection with" his divorce decree and that the debt was therefore non-dischargeable under § 523(a)(15). Id. at *8.

In his summary judgment motion, Mr. Hanis characterized the Agreements as a post-divorce business transaction that was unrelated to the Divorce Decree (Bankr. Doc. 19 at 8-14). In Mr. Hanis's view, the Agreements "involve the sale of a business that just happened to be owned by former spouses, and the Business Debt that was created by the Agreements did not arise from Mr. Hanis and Ms. Friedman's status as ex-spouses, but rather as ex-business associates" (Id. at 13-14; Bankr. Doc. 22 at 2-4).[3] Mr. Hanis further argued that the Consent Agreement did not modify the Divorce Decree because, according to its express terms, the Divorce Decree was non-modifiable (Bankr. Doc. 22 at 4).

Mr. Hanis emphasized that Woosley was decided by the Eastern District of Tennessee and thus was not binding on the Bankruptcy Court, and sought to distinguish it (Id. at 3-4). He noted that, in Woosley, only four months elapsed between the entry of the divorce decree and the Woosleys' business agreement, and that, in contrast, two years elapsed in the instant case (Id. at 3). Second, he argued that the divorce decree in Woosley actually divided the marital business,

---

[3] Although it appears Mr. Hanis conceded that the Consent Agreement "memorializes a reduced maintenance payment," he nevertheless argued to the Bankruptcy Court that "[u]ndoubtedly, the use of the term 'maintenance' in the Consent Judgment was a misnomer, as Ms. Friedman's entitlement to non-modifiable court-ordered maintenance terminated upon her remarriage in November 2012" (Id. at 11). Mr. Hanis was obligated to pay Ms. Friedman maintenance under the terms of the Divorce Decree at the time they executed the Agreements in March 2012, and the Consent Agreement expressly stated that the parties' intended to modify the Divorce Decree's maintenance obligation at that time. Nevertheless, Mr. Hanis argued to the Bankruptcy Court that the parties did not intend their use of the term "maintenance" in the Consent Agreement to refer to the Divorce Decree's maintenance obligation, given the fact that Ms. Friedman's remarriage seven months later effectively terminated his maintenance obligation

6

thereby creating the plaintiff's ownership interest and a source of revenue for her support. (Id.) In Mr. Hanis's view, Ms. Friedman did not rely on revenue from M&M because the Divorce Decree separately awarded her child support and maintenance (Id. at 4). Mr. Hanis contended that the Agreements therefore did not simply reaffirm a pre-existing marital debt but instead created a new debt more than two years after Mr. Hanis and Ms. Friedman divorced (Id.).

During the pendency of the bankruptcy proceedings, the parties also filed the following motions in their Circuit Court divorce proceeding: Ms. Friedman filed a motion to modify the Divorce Decree in December 2013; Mr. Hanis filed a counter-motion to modify the Divorce Decree in March 2014; and Ms. Friedman filed a Motion to Determine Amounts Due and Owing and Motion for Contempt in July 2014 (Doc. 24.1 at ¶¶ 7-9). In these motions, Mr. Hanis sought to terminate his maintenance modification retroactively to November 2012, when Ms. Friedman remarried, and Ms. Friedman sought to enforce the Consent Agreement to the extent it purported to extend Mr. Hanis's maintenance obligation beyond her November 2012 remarriage pursuant to the agreed-upon payment schedule (Id. at ¶¶ 7-9, 21-22).

On June 9, 2015, the Circuit Court entered Findings of Fact, Conclusions of Law, and Modification Judgment ("Circuit Court Order") in the divorce proceeding, which included the following relevant findings:

> 17. Neither party filed a Motion to Modify the [divorce decree] prior to entering into the Consent Agreement. Further, neither party filed the Consent Agreement with the [Circuit] Court or sought judicial approval of the Consent Agreement.
>
> 18. The Consent Agreement was never incorporated into or made a part of the [divorce decree] and, therefore, did not modify [the divorce decree].
>
> 19. Inasmuch as the Consent Agreement was not incorporated into the decree, it may be subject to independent enforcement via a breach of contract action, but is

---

under the Divorce Decree. This argument lacks merit.

7

not subject to enforcement by [the Circuit Court]. Koster v. Cain, 383 S.W.3d 105, 115 (Mo. App. W.D. 2012).

20. [Ms. Friedman] remarried in November 2012. Pursuant to the [divorce decree], the maintenance terminated upon her remarriage.

. . .

22. The Court does not have authority to determine the parties' rights or enforce the Consent Agreement by way of a Motion for Contempt and Motion to Determine Amounts Due and Owing. There is no claim for independent enforcement of the Consent Agreement via a breach of contract action before [the Circuit Court] and the [Circuit] Court does not consider such a claim herein.

. . .

70. [Ms. Friedman's] Motion for Contempt and Motion to Determine Amounts Due and Owing are also denied with respect to [Ms. Friedman's] request to enforce the parties' Consent Agreement. [Mr. Hanis] is obligated to pay the maintenance originally ordered by the [Circuit] Court in the parties [divorce decree] until the date of [Ms. Friedman's] remarriage.

(Id. at ¶¶ 17-20, 22, 70).

On August 1, 2016, the Bankruptcy Court entered its Order granting summary judgment in Ms. Friedman's favor, denying Mr. Hanis's motion for summary judgment, and declaring that the Business Debts were non-dischargeable in Mr. Hanis's Chapter 7 proceeding (Bankr. Doc. 28). More specifically, the Bankruptcy Court concluded that the Business Debt was "incurred in the course of a divorce or in connection with a divorce decree or other order of a court of record," reasoning as follows:

> The Divorce Decree provided for the original treatment of the Business Debt. The Consent Agreement makes numerous references to the Divorce Decree. The fact that the Consent Agreement was executed a few years after the entry of the Divorce Decree does not make the Consent Agreement merely a private business transaction. The debts incurred in the Consent Agreement were incurred in the course of the divorce.
>
> The facts here are similar to those of [Woosley]. In that case, the bankruptcy court found that the debts were, in fact, incurred in connection with the divorce for purposes of § 523(a)(15) based on: (1) explicit mentions of and commonality

8

between the original divorce decree and the subsequent arrangement; (2) the fact that the "fundamental nature of the debtor's obligation" did not change between the two agreements; and (3) the equitable considerations implicated by the exchange of ownership interests in the jointly owned company and reduced alimony payments. Similarly here, the Consent Agreement makes many references to the Divorce Decree; the fundamental nature of the [Mr. Hanis's] obligation remained the same; and the equitable considerations weigh in favor of determining that the Business Debt was [incurred] in connection with the divorce ([Ms. Friedman] gave up certain interests awarded to her in the divorce and agreed to lessened maintenance payments, in exchange for being indemnified for and held harmless from the Business Debt).

(Id. at 5-6).

Mr. Hanis timely appealed the Bankruptcy Court's decision (Bankr. Docs. 30, 36-37). The sole issue now before this Court is whether the Bankruptcy Court erred in determining that the Business Debts were "incurred in the course of a divorce or in connection with a divorce decree or other order of a court of record," and thus were non-dischargeable under § 523(a)(15).

### Arguments of the Parties

In this Court, Mr. Hanis reiterates his argument that he did not incur the Business Debts in connection with the parties' divorce (Doc. 5 at 18-27). He contends that the Business Debts are unrelated to the Divorce Decree because they "did not arise out of the divorce proceedings" and "they were not created by the Divorce Decree or related orders of a court of record" (Id. at 20). Mr. Hanis continues to emphasize the fact that nearly two years elapsed between the Circuit Court's entry of the Divorce Decree and the parties' execution of the Agreements (Id. at 20, 23-24, 26).

Mr. Hanis acknowledges that the Consent Agreement makes numerous references to the Divorce Decree and refers to the parties' divorce proceeding by style and case number. However, in his view, the Bankruptcy Court nevertheless erred by treating the Consent Agreement's references to the Divorce Decree as evidence of a connection between the two documents

9

because "[m]ere reference to the [Divorce] Decree, without modifying its terms, does not create a marital debt, particularly where the Business Debt was not an obligation of the Debtor created by the Divorce Decree" (Id. at 22). He further asserts that "the express purpose of" the Consent Agreement was to release and indemnify Ms. Friedman from the Business Debts (Id.).

Before this Court, Mr. Hanis additionally argues that the Bankruptcy Court erred in finding the Business Debts non-dischargeable under § 523(a)(15) in light of the Circuit Court Order, which held that the Consent Agreement was not enforceable in the parties' divorce proceeding (Id. at 21-22). According to Mr. Hanis, the Circuit Court "could not have stated more emphatically that it did not consider this Business Debt to be enforceable in connection with the divorce proceedings, bringing the debt squarely outside of Section 523(a)(15)" (Id. at 21).

In response, Ms. Friedman urges affirmance (Doc. 8). First, she argues that § 523(a)(15) requires only that the Business Debts were incurred "in connection with" the divorce decree, not that they were "created by" the Divorce Decree, as Mr. Hanis appears to contend (Id. at 7-8). Ms. Friedman further argues that the passage of time between the Circuit Court's entry of the Divorce Decree and the parties' execution of the Agreements is irrelevant to the issue of whether Mr. Hanis incurred the Business Debts "in connection with" the Divorce Decree (Id. at 9). She also disagrees with Mr. Hanis's characterization of the Consent Agreement as merely a business transaction, noting that it also addressed the subject matter of the Divorce Decree (Id. at 9-10). Finally, Ms. Friedman argues that the Circuit Court's conclusion that the Consent Agreement was not enforceable in the divorce proceeding is not relevant to the issue before this Court (Id. at 10-11). For the following reasons, the Court affirms the decision of the Bankruptcy Court.

## Discussion

1. Standard of Review

10

When a debtor appeals a bankruptcy court's order to a district court, the district court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. In re Tasic, No. 4:13-CV-00479-ERW, 2013 WL 2425133, at *3 (E.D. Mo. June 4, 2013) (citing In re O'Brien, 351 F.3d 832, 836 (8th Cir. 2003)). Issues committed to the bankruptcy court's discretion are reviewed for an abuse of that discretion. Id. (citing In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008)). The bankruptcy court abuses its discretion if it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous. Id. (citing Zahn, 526 F.3d at 1142). At oral argument, the parties disagreed as to which standard of review should apply in this appeal. The Court notes that, in light of the undisputed facts of this case, the result would the same under either a de novo review or a review for an abuse of the bankruptcy court's discretion.

2. Summary Judgment Standard

The instant case was decided on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) and Federal Rule of Bankruptcy Procedure 7056. The bankruptcy court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011); cf. In re Turner Grain Merch., Inc., 557 B.R. 147, 149 (Bankr. E.D. Ark. 2016) (Rule 56 applies in adversarial bankruptcy proceedings). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

11

A moving party always bears the initial burden of informing the court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247-48. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 248.

In passing on a motion for summary judgment, the bankruptcy court must view the facts in the light most favorable to the nonmoving party. Torgerson, 643 F.3d at 1042. The bankruptcy court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th

Cir. 1993) (quoting Anderson, 477 U.S. at 251-52). Here, the parties filed cross-motions for summary judgment in the bankruptcy court, and there was no dispute as to the material facts.

3. Section 523(a)(15)'s Exception from Discharge under Chapter 7

Qualified individual debtors are generally entitled to discharge of their obligations on pre-petition debts under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 727. However, § 523(a) excepts certain debts from discharge in bankruptcy. As relevant to this appeal, § 523(a)(15) provides as follows:

> (a) A discharge under [Chapter 7] does not discharge an individual debtor from any debt—
>
> . . .
>
> (15) to a spouse, former spouse, or child of the debtor[4] . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . .

11 U.S.C. § 523(a)(15). As the creditor, Ms. Friedman bears the burden of proof that the Business Debts fall within the parameters of § 523(a)(15). See In re Beck, 298 B.R. 616, 622-23 (Bankr. W.D. Mo. 2003). At oral argument, the parties agreed that neither the United States Supreme Court nor the United States Court of Appeals for the Eighth Circuit has squarely addressed the issue presently before the Court.

4. The Business Debts are non-dischargeable pursuant to § 523(a)(15) because they were incurred in connection with the Divorce Decree.

---

[4] The issue of whether the Business Debts fall outside the scope of § 523(a)(15) because they are not owed "to a spouse, former spouse, or child of the debtor," but are instead owed to a third-party creditor is not before the Court. See Hanson v. First Nat. Bank in Brookings, 848 F.2d 866, 869 (8th Cir. 1988) (issues not raised in the bankruptcy court or in the district court on appeal are waived); cf. In re Kline, 65 F.3d 749, 750-51 (8th Cir. 1995) (concluding that a debt owed directly to a third party was non-dischargeable under a related subsection of § 523(a) notwithstanding statutory language requiring that the debt be payable to a "spouse, former spouse, or child of the debtor").

13

The Court concludes that Mr. Hanis incurred the Business Debts in connection with the Divorce Decree. First, Mr. Hanis incurred a new, post-divorce debt to Ms. Friedman by agreeing to indemnify her and to hold her harmless on the Business Debts. See In re Clark, 207 B.R. 651, 657 (Bankr. E.D. Mo. 1997) ("The obligation that is not dischargeable in these situations is a debtor's responsibility to hold his non-debtor, ex-spouse harmless."); see In re McKinnis, 287 B.R. 245, 250 (Bankr. E.D. Mo. 2002) (citing In re Burns, 149 B.R. 578, 582 (Bankr. E.D. Mo. 1993) (an obligation to hold a former spouse harmless for marital debts is an obligation to a former spouse); cf. In re Marble, 426 B.R. 316, 319 (8th Cir. BAP 2010).

The Court further concludes that Mr. Hanis incurred this new debt "in connection with" the Divorce Decree because the clear, unambiguous terms of the Agreements reflect that the parties intended them to modify various terms of the Divorce Decree.[5] More specifically, the Consent Agreement refers to the Divorce Decree nine different times. See Woosley, 2010 WL 500423, at *7. Moreover, the parties clearly agreed in the Consent Agreement to alter the amount and duration of Mr. Hanis's maintenance obligation under the Divorce Decree: the Consent Agreement explicitly stated that Mr. Hanis and Ms. Friedman "desire[d] to enter into [the Consent Agreement] in order to modify by consent [Mr. Hanis's] maintenance obligation to [Ms. Friedman]" and that "[Mr. Hanis's] maintenance obligation to [Ms. Friedman] pursuant to the [Divorce Decree] shall be modified."

Further, in the Acquisition Agreement, the parties agreed to modify their ownership interests in M&M with Mr. Hanis purchasing Ms. Friedman's interest in M&M consistent with the Divorce Decree's buyout provision, i.e. for a purchase price that "represent[ed] the larger

---

[5] The Court offers no opinion on the issue of whether the Agreements were effective to modify the Divorce Decree or any of its non-modifiable mandates under Missouri law because such a decision is not necessary to resolve the issue before the Court in this appeal.

14

number between three times the last 12 months of revenue and 50% of the agreed upon value of M&M." Significantly, Mr. Hanis's agreement to indemnify Ms. Friedman and to hold her harmless on the Business Debts was also consistent with the Divorce Decree's buyout provision, which required the purchasing spouse to absolve the selling spouse of any and all liability on the Business Debts. The Acquisition Agreement further modified the terms of the Divorce Decree by releasing Ms. Friedman from the requirement that she continue to operate M&M until Mr. Hanis's maintenance obligation terminated.

The Court disagrees with Mr. Hanis's assertion that the Business Debts fall outside the scope of § 523(a)(15) because they were not created by and did not arise out of the Divorce Decree. Section 523(a)(15) does not require that a debt be created by or arise out of the Divorce Decree. While debts that are created by the explicit terms of a divorce decree certainly fall within the scope of § 523(a)(15), the plain language of § 523(a)(15) also includes debts that are incurred "in connection with" a divorce decree. As such, the relevant inquiry for the Court is not whether the Business Debts were created by, or even arose out of, the Divorce Decree. Rather, the issue before the Court is whether Mr. Hanis incurred the Business Debts "in connection with" the Divorce Decree.

The Court also is not persuaded by Mr. Hanis's argument that the Consent Agreement's "mere reference to the Divorce Decree without modifying it" was insufficient to bring the Business Debts within § 523(a)(15)'s scope. The Consent Agreement does not merely reference the Divorce Decree as Mr. Hanis represents. To the contrary, the Consent Agreement's multiple references to the Divorce Decree were neither inadvertent nor incidental. Not only does the Consent Agreement refer to the Divorce Decree nine different times, it explicitly states that the parties intended to modify Mr. Hanis's maintenance obligation under the Divorce Decree, and its

15

clear terms expressly state that the Divorce Decree was to be modified by altering the amount and duration of Mr. Hanis's maintenance obligation. In the Acquisition Agreement, the parties further agreed to alter their respective interests in M&M, and to relieve Ms. Friedman of her obligation to operate M&M until Mr. Hanis's maintenance obligation terminates.

To the extent that Mr. Hanis implies that the sole purpose of the Consent Agreement was to provide Ms. Friedman with indemnification from the Business Debts, the Court disagrees. The Consent Agreement clearly includes two express purposes. First, as Mr. Hanis accurately notes, the Consent Agreement reflects the parties' intent that he would agree to indemnify Ms. Friedman from the Business Debts as part of his purchase of her interest in M&M. However, contrary to Mr. Hanis's view, the Consent Agreement also included a second express purpose: to modify Mr. Hanis's maintenance obligation as was previously set forth in the Divorce Decree.

Further, the Court is not persuaded by Mr. Hanis's characterization of the Agreements as merely providing for a buyout of one business associate's share of a jointly-owned business by another business associate who happened to be a former spouse. The Court can certainly envision a circumstance where business partners who also happen to be former spouses enter into a purely business agreement which would not be "in connection with" their divorce decree and thus would fall outside the scope of § 523(a)(15). However, this case does not present such a situation. While the Court is mindful of the fact that nearly two years elapsed between the entry of the Divorce Decree and the parties' execution of the Agreements, Mr. Hanis and Ms. Friedman were not simply business partners who happened to be former spouses, and the Agreements did not call for a business transaction that was unrelated to their divorce. Cf. In re Tracy, No. 06-40044-JDP, 2007 WL 420252, at *3 (D. Idaho Feb. 2, 2007) (debts created by a state court money judgment fell outside the scope of § 523(a)(15) because they arose

16

approximately a year and a half after the parties' completed their divorce and were based on subsequent dealings between the parties unrelated to the dissolution of their marriage). The passage of time may be a factor for consideration in deciding whether a debt was incurred in connection with a debtor's divorce decree, but it certainly is not determinative. As more fully discussed above, Mr. Hanis's agreement to indemnify Mr. Friedman and to hold her harmless on the Business Debts was made in conjunction with his purchase of her interest in M&M pursuant to the Divorce Decree's buyout provision and in exchange for modification of his maintenance obligation under the Divorce Decree; it was therefore made "in connection with" the Divorce Decree, notwithstanding the fact that the transaction took place well after the parties had finalized their divorce. Cf. In re Candela, No. 11-19030, 2011 WL 6010245, at *5 (Bankr. D.N.J. 2011) (citing In re Crosswhite, 148 F.3d 879, 882 (7th Cir. 1998) and 4 COLLIER ON BANKRUPTCY § 523.23) (debts arising out of property settlement agreements are within the ambit of section 523(a)(15)).

Finally, the Court notes that the Circuit Court's decision not to enforce the Consent Agreement when it ruled on the parties' motions to modify the Divorce Decree does not change the result. Notably, the Circuit Court did not conclude that the terms of the Consent Agreement were unenforceable as a matter of law. Rather, it noted that—because the Consent Agreement had not been incorporated into the Divorce Decree—the parties' consensual modification of Mr. Hanis's non-modifiable maintenance obligation in the Consent Agreement was unenforceable in the divorce proceeding. As such, the Circuit Court concluded that, under Missouri law, the Consent Agreement's modification of the maintenance obligation was instead enforceable only in a separate action for breach of contract. See Koster v. Cain, 383 S.W.3d 105, 115 (Mo. Ct. App. 2012).

Therefore, having considered all the facts and circumstances of this case and as discussed more fully above, the Court concludes that Ms. Friedman has met her burden of establishing that Mr. Hanis incurred a debt "in connection with" the Divorce Decree when he agreed to indemnify Ms. Friedman and to hold her harmless on the Business Debts, notwithstanding the fact that the Agreements were executed well after the parties' Divorce Decree had been entered.

## Conclusion

For these reasons, the Court concludes that the Bankruptcy Court correctly denied Mr. Hanis's motion for summary judgment, granted Ms. Friedman's motion for summary judgment, and declared the Business Debts non-dischargeable, pursuant to 11 U.S.C. § 523(a)(15), in Mr. Hanis's Chapter 7 bankruptcy proceeding. Accordingly,

**IT IS HEREBY ORDERED** that the judgment of the United States Bankruptcy Court for the Eastern District of Missouri is **AFFIRMED**.

A separate Judgment accompanies this Order.

Dated this 8th day of August, 2017.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**